## HIRAM VENNUM
### *v.*
## SAMUEL C. DAVIS *et al.*

1. CHANCERY—*jurisdiction.* A party sued at law having a defense of which he has no knowledge, or of which he cannot avail himself at law, either for the reason that it is purely equitable in its nature, or because by the rules of law he cannot avail himself of it, may have relief in equity.

2. SAME—*bill of discovery in.* A party is not obliged to resort to a bill of discovery in the first instance. Should he do so, and fail in obtaining the facts sought, he would be precluded from filing an original bill.

3. SAME. A bill of discovery is only resorted to when the evidence rests exclusively with the party called upon to disclose it. If there be other evidence, such a bill cannot be sustained, and the complainant in such a bill must aver and swear that the facts are known to no other person.

WRIT OF ERROR to the Superior Court of Chicago; Hon. JOHN M. WILSON, Judge, presiding.

This was a bill in chancery in the Superior Court in the city of Chicago, brought by the plaintiff here against the defendants, praying that a certain sale of lands be set aside and the

judgment obtained against complainant be declared void, and that the defendants, Davis, Moody & Co., be enjoined from collecting the debt claimed by them of complainant, and for general relief.

The facts on which the bill was based are substantially these: In 1856, William Vennum and George King, two of the defendants, were partners in the mercantile business, in a small way, in the town of Milford, in the county of Iroquois. In 1857, King sold out his interest in the concern, to the plaintiff, who was a farmer, residing about four miles from Milford, and possessed of real and personal estate to a considerable amount. Vennum & King were somewhat indebted at the time King sold out, and retired from the business, and among others to Davis, Moody & Co. The business was thereafter conducted in the name of William and Hiram Vennum, the complainant. Without the knowledge of Hiram, William Vennum, on the promise of Davis, Moody & Co. to give time, was induced, for an old debt due them by Vennum & King, to give the joint note of Vennum & King and W. & H. Vennum, payable the day after date in satisfaction thereof. This was on the 11th of September, 1857, and the note was for $2,176\frac{14}{100}$, with interest at ten per cent. per annum. The complainant had no knowledge of this transaction, the entire business of the concern being conducted by W. Vennum. In January, 1859, they sold out their stock at auction and dissolved the partnership. When they dissolved they were indebted in Chicago for merchandise, but to what amount, complainant had no knowledge, but for which he and W. Vennum had been often sued and many of the debts paid by complainant out of his individual means. His partner, at the time of the dissolution, informed him, and he believed it, that there was no very large amount of debts outstanding against the firm, and the effects of the partnership were divided with that understanding, when he discovered that his partner had involved him to the amount of about three thousand dollars, for which he was sued, and his property sold to satisfy them, but believing the debts honest, he made no

defense. It seems, when he entered into the partnership, the old firm of Vennum & King owed quite a number of debts in Chicago to various firms in that city. Complainant knew nothing of this, and had no means of knowing when he bought out King and formed the partnership with William; but he was, in nowise, to become responsible for these debts, or for any debts of Vennum & King. When William Vennum and King dissolved they were indebted to Davis, Moody & Co. $2,176$\frac{14}{100}$, a fact which plaintiff discovered a short time before he filed his bill of complaint, and for which, on the 11th September, 1857, that firm executed their note at one day with ten per cent. interest, payable in Chicago, to which note, William Vennum, without the knowledge or consent of complainant, put the name of their firm W. & H. Vennum. In December, 1858, complainant was served with a summons from the Cook County Court of Common Pleas, in the name of the payees, Davis, Moody & Co., and against William Vennum and George King and the complainant, and he supposing it was for a just debt for goods purchased for the firm of which he was a member, and having full confidence in his partner, made no inquiry into the matter, thinking that King might have been surety on the note and knowing nothing of any indebtedness of Vennum & King. On the 7th of January, 1859, a judgment was rendered on this note which, after deducting some credits, amounted to $1,941$\frac{74}{100}$ and costs, and on the 8th of January, 1859, an execution issued to Iroquois, and was levied on the tenth of March thereafter, on 397 acres of land, comprising the home and farm of the complainant, and made up of several tracts of land all adjoining, and the same was struck off, on the ninth of April to the plaintiffs in execution, for the amount of the judgment and costs, a certificate of which was filed with the clerk of the Circuit Court.

The complainant stated in his bill that, in September, 1859, he went to Chicago, having been repeatedly sued for debts contracted by his partner, to ascertain how much his firm owed, and then, for the first time, he learned from Davis,

Moody & Co., that their debt was contracted by Vennum & King, and that William Vennum had signed the firm name of W. & H. Vennum not only to this note, but to a large amount of other like indebtedness, without any right or authority from complainant. He charges that these payees and William Vennum confederated to injure, wrong and oppress him, and procured and persuaded William Vennum to sign the name of W. & H. Vennum to the note, knowing that it was given for the debt of Vennum & King.

The complainant states, had he known it was the debt of Vennum & King, he would have defended the action, or applied to a court of chancery to enjoin it; but as he had full confidence in his partner, and did not know or suspect that he had or would sign their firm name for a debt of Vennum & King, until long after his lands were sold on the judgment, he could not defend or enjoin the action. He states that Vennum & King are insolvent, and if compelled to redeem the lands he will have no remedy. He alleges that at the date of the judgment, he was, and yet is, the owner of the lands — that they were his homestead, on which he had his dwelling house, barns and other necessary buildings, and resided thereon; was a householder, with a wife and family; that the lands were sold by the sheriff without appraising or setting off the homestead, in the mode prescribed by the statute, and that he had not released the same; that the debt was not contracted for the purchase of the lands or for its improvement. An answer, under oath, was waived, and the bill prayed as above stated. By an amendment to the bill filed November 14, 1860, complainant stated that the transaction of giving the note, and the consideration of it, were known only to Davis, Moody & Co., and William Vennum and George King; that they being incompetent witnesses in the action at law, he, complainant, had no witness or other evidence by which he could have proved, in an action at law, that the note was given wholly for the debt of Vennum & King, and that he was not liable on it, except by obtaining a discovery from the plaintiffs in the action at law; that at the time of taking the note, by Davis, Moody

& Co., from William Vennum, they all knew it was given for the debt of Vennum & King, and for which they well knew complainant was in no manner liable, and that he had not undertaken to pay it; that the several tracts of land adjoin each other, forming one compact body or lot of land, and as such were his homestead, with his dwelling house, &c., thereon.

A demurrer to this bill was overruled, whereupon Davis, Moody & Co. answer and admit partnership of K. & V.; are ignorant of King's sale to complainant, but believe statement in bill to be true; and that complainant assumed the debts of K. & V. as the only consideration for his purchase. Admit that complainant, about June 1, 1857, entered into partnership with W. V.; that their stock was sold at auction, in January, 1859, about the time they recovered their judgment, whereby the fund was distributed that ought in justice to have been applied to payment of said debt; that W. V. was the active manager of the business of W. & H. V.; are advised by counsel, and believe it is no sufficient ground for setting aside a judgment, that defendant therein is inattentive to his interests involved in the suit, or matters out of which it grew. Believe it may be true, complainant has paid many debts of W. & H. V. out of his individual funds, as he was bound to do. Admit that in January, 1859, about the time they recovered their judgment W. & H. V. divided their partnership funds and property, whereby the fund was distributed and hazarded that should have been applied to payment of said judgment. It may be true, but it is improbable, that complainant knew nothing and made no inquiry about the indebtedness of K. & V. when he formed his partnership with W. V. The note was given by W. V. after the partnership relation was formed by him with complainant, and without fraud, artifice, or improper procurement on their part. Admit recovery of judgment at law, as alleged in bill; issuing of execution; but aver that complainant was liable at law to pay the note, and if the matter alleged in bill is true, it furnished a good defense in the suit at law, and should have been set up and pleaded therein, and defendants saved delay, expense and loss of the debt, by settling the rights

at an early day. Advised that by rules of equity, relief cannot be granted to a party who makes no inquiry, and fails to defend at law because he has full confidence in his partner. Admit levy and sale as in bill. Deny that it first came to complainant's knowledge in September, 1859, that it was originally the debt of K. & V., but believe he knew it when he formed the partnership with W. V. Admit that K. & W. V. are insolvent, but if complainant had set up his defense at law, they could have made their money out of them; but complainant has laid by, until they have become insolvent, when he asks for relief. Deny that the premises are exempt from sale as a homestead; but aver that the dwelling house was situated on lot 8, which is worth at least $2,000. Submit that all the matters in bill may be tried and determined at law, and for which complainant is entitled to no relief in equity, and ask the same benefit as if they had demurred to the bill, and deny all fraud and combination.

The depositions of William Vennum and George King were taken by complainant, which fully establish the prominent facts stated in the bill of complaint as to the execution of the note, and on account of the indebtedness of Vennum & King alone, and that complainant was not liable for the debt, and that he, King, applied the proceeds of the sale to complainant to the payment of the debts of his firm.

The remaining testimony, in relation to the question of homestead, it is unnecessary to notice now.

The court decreed that lot eight, containing about 155 acres, was the homestead of complainant, and set aside the levy and sale of it, and enjoined Davis, Moody & Co., perpetually, from setting up any claim to that lot under this judgment and execution sale, and from using them as evidence of title, and decreed the costs against them.

From this decree the complainant prosecutes this writ of error, and assigns as error: 1. the refusal of the court to enjoin perpetually the judgment at law in the bill mentioned. 2. In not setting aside the sale of all the lands; and, 3. In not setting aside the sale of more of the lands than lot eight.

Messrs. GOOKINS,. THOMAS & ROBERTS, for the plaintiff in error.

Messrs. GALLUP & HITCHCOCK, and ·Messrs. SCAMMON, McCAGG & FULLER, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

On the assignment of errors the plaintiff in error makes the following points : First. A party sued at law, having a defense of which he does not know, or of which he cannot avail himself at law, either for the reason that it is purely equitable in its nature, or because by the rules of law he cannot avail himself of it, may enjoin the judgment by bill in equity.

In support of this proposition many authorities are cited, all of which we have looked into, and find the doctrine to be as stated.

As a general rule, if a party against whom an action is brought has a legal defense, he must avail himself of it in the suit at law. In the case of the *Marine Insurance Company* v. *Hodgson*, 7 Cranch, 333, MARSHALL, Ch. J., said : " Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The spirit of all the cases to which reference has been made, is that a party must avail himself of every means of defense within his knowledge and power at the time of going to trial, or he will be afterwards precluded from urging it.

In *Le Grun* v. *Governeur and Kemble*, 1 Johns. Cas. 502, KENT, J., said : " Every person is bound to take care of his own rights, and to urge them in due season and proper order.

This is a sound and salutary principle of law. Accordingly, if a defendant having the means of defense in his power neglects to use them, and suffers a recovery to be had against him by a competent tribunal, he is forever precluded."

Where a party is ignorant of a material fact, without any inattention or negligence on his part, so that he could not use it in any way until after the trial at law, a court of equity will in such case give relief after judgment when justice demands it. This was said by Vice-Chancellor WHITTLESEY in the case of *Patterson* v. *Bangs*, 9 Paige Ch. 630. In that case, the proof the complainants wanted was the testimony of one of their co-defendants at law, proof which, of course, could not be reached by a bill of discovery. They seemed to suppose that a bill of discovery against the plaintiff at law would furnish the necessary proof. They tried that experiment and failed. They knew, then, before going to trial, that they must either file a bill in this court for relief, so as to secure the testimony of one of their co-defendants, or that they must go to trial upon such proof as they had. All the facts which had a bearing upon their case had been within their knowledge. The only question now is, can they come here after deliberately going to trial at law with a full knowledge of the facts of their case? Id. 632.

On these grounds the injunction was dissolved; the complainants had gone to trial at law with a full knowledge of all the facts of their case, and having failed, were not allowed to resort to a court of equity.

This decision is placed distinctly on the ground that the complainant knew of his defense at law, and neglected to make it in the proper mode.

In the case now before us, the complainant did not know of any defense until after his land was sold, then, for the first time, he received the knowledge that the debt for which the recovery was had was not his debt, and that he was in no manner responsible for its payment.

It is said, however, by the defendants in error, that when he was served with process, he was informed of the nature of the

claim. This could hardly be, for the process was the ordinary summons, in which he, with W. Vennum and King, were required to answer the plaintiff. Naturally supposing it was a debt due by the firm, incurred by the managing partner, for which King might be security, there was nothing to arouse suspicion; and having no suspicion, there was nothing in the case to prompt inquiry. He could not have supposed it was a summons to answer for a debt due by Vennum & King, when he knew he was not liable and had never undertaken to be liable for any of those debts.

Here, then, is a plain case, where the complainant did not know of any defense to the suit at law. It may be likened to a case of newly discovered testimony on a motion for a new trial. Such motions, if well supported, are seldom refused.

In the case of *Crisman et al.* v. *Beasely, Adm.*, 1 Sme. & Mar. Ch. 561, it was held that an allegation, in a bill in chancery, that the complainant did not come to the knowledge of the defect of his vendor's power to sell, who was an administrator, until after the judgment at law in favor of the vendor for the purchase-money, is a sufficient excuse for not having made the defense at law.

One of the principles of this bill, one of the strong reasons on which it is founded, is the total ignorance of the complainant of the facts of the transaction, disabling him from setting up a defense, by which a recovery, inequitable and iniquitous, has been had against him. Shall it be said that a court of equity has no power to relieve in such a case?

But it is said the complainant, by proper plea, could have established his defense at law, and thrown the onus of proof upon the defendants. This may be so, but this consideration brings us back to the point from which we started. The plaintiff did not know that he had any defense. Nothing had transpired to excite inquiry or put him upon his diligence. He acted as most prudent and cautious men would act under similar circumstances. Confiding in his partner and knowing he had contracted debts for which complainant had been sued, and been compelled to pay, another summons of a similar character

was not calculated to excite any suspicion. The complainant, therefore, had no occasion to find out a defense, as, on the supposition and belief, the summons was for an honest demand against him, as a member of the firm of W. & H. Vennum, he had no defense to make.

The same may be said of a bill of discovery. There was nothing in the knowledge of complainant about which to seek a discovery.

But, what must have been the character of the pleas if filed? They must have denied the execution of the note, or the joint liability of the parties, or both. What then would be the character of the proof under such pleas? Proof by the plaintiffs in the action, that W. & H. Vennum were partners at the time the note was executed, and that the signature was that of a member of the firm, would be alone necessary. The very constitution of a partnership furnishes a presumption that each individual partner is an agent of the rest. 2 Stark. Ev. 800. This appears from the cases cited by the defendants in error, as decided by this court (*King* v. *Haines et al.*, 23 Ill. 340), and the cases cited in the opinion.

What could the complainant have gained by a bill of discovery? At best, a resort to a bill of discovery is always hazardous; for if the party does not come up to the facts as the complainant in such bill has charged them to be, or they are denied or toned down, the answer would, in very many cases, be of little avail in a defense at law. Nor was the complainant obliged to resort to such bill in the first instance. Had he done so, and failed in obtaining the facts sought, he would have been precluded from filing this bill for relief, as is seen in the case cited from 9 Paige, 630, *Patterson* v. *Bangs*. A bill of discovery is only resorted to when the evidence rests exclusively with the party called upon to disclose it. If there be other evidence, such a bill cannot be sustained, and the complainant in such bill is bound to aver and swear that the facts are known to no other person. Story Eq. Juris., § 74. When, therefore, a party defendant has other testimony besides the plaintiff in the action, he must resort to it, and this

37 — 35TH ILL.

he could do in this case in no other way than by an original bill for relief, making his co-defendants in the suit at law defendants to his bill, and taking their testimony. In the suit at law they are incompetent witnesses for complainant, being co-defendants on the record. In this proceeding in chancery, the bill having been taken for confessed as against them, they can be examined as witnesses for the complainant. The course, therefore, adopted by the plaintiff in error was the legitimate course by which the equity of his case can be fully presented.

The facts necessary to the relief prayed for, being established by proof, the court below should have enjoined perpetually the judgment in favor of Davis, Moody & Co., so far as this complainant is affected thereby, it being unconscionable and inequitable to retain the judgment rendered for a debt, for which the plaintiff in error is in no sense responsible. The court also should have set aside the entire levy and sale of the lands. Not having done so, the decree of the Superior Court must be reversed, and the cause remanded with instructions to proceed in conformity with this opinion.

*Decree reversed.*