EDSON F. HANNUM & another, administrators, *vs.* JOSEPH S. KINGSLEY.

In a deed of land described as "bounded north of A. B.'s land," and west on a certain road, the said word "of" may be construed to mean "by," if necessary to make the whole description coherent.

By a quitclaim deed, J. S. conveyed all his right and title in real estate described as "one piece of land lying the south side of the county road," and definitely bounded; "also all the land situate and lying north of the road aforesaid, bounded north of M.'s land and west on" another road. Construing "of" in the sense of "by," in the phrase "north of M.'s land," the description included one piece of land, divided into two parcels by the county road. *Held,* that it did not also include another piece of land lying north of the county road and of M.'s land, and not bounded west on the other road.

Extrinsic evidence is inadmissible to vary the construction of a deed, as between a third person and the grantee.

WRIT OF ENTRY brought on May 12, 1871, under the Gen. Sts. *c.* 102, §§ 12, 13, by the administrators of the estate of Waitstill S. Pomeroy, to recover a parcel of land in Northampton. Plea, *nul disseisin.* Trial in the superior court, before

*Pitman,* J., who by consent of the parties made a report under the St. of 1869, *c.* 438, before verdict, of which the following is the substance :

It was agreed that the demandants were duly licensed to sell the real estate of their intestate ; that after the license was granted, and before this action was brought, Hannum made a formal entry on the demanded premises in behalf of himself and his co-administrator ; and that the premises were owned by Ira B. Thorp, who conveyed them to Zenas Kingsley by deed dated March 12, 1830.

The demandants claimed title under a deed from Zenas Kingsley to their intestate, dated February 24, 1868.  The tenant claimed title under a deed to himself from Joseph Kingsley and said Zenas Kingsley, dated February 1, 1838, wherein, for the consideration of $300, the said Joseph and Zenas quitclaimed and released to the tenant, his heirs and assigns forever, all their right and title in " the following real estate and described property, viz. : one piece of land lying the south side of the county road and east of Harvey Cole's land so far south as said Cole's southeast corner, then running eastwardly across the river to Lyman Bartlett's land so as to contain one half of the lot lying east of the river adjoining the road aforesaid ; also all the land situate and lying north of the road aforesaid, bounded north of the heirs of Matthew Clark's land and west on the road which leads from Asa Parsons's dwelling-house to Martin Wright's dwelling-house, with all the buildings standing thereon, excepting one half of the grist mill and the red house and garden situate east of the bridge for the use of the said Joseph Kingsley during his natural life and no more ; also two thirds of all we own of the saw mill and shingle do., with the banks, dams and yards, with two thirds of all the land adjoining which is deeded to Jos. S. and Z. Kingsley by Martin Wright."

A plan was made part of the report, of which the following is a transcript sufficiently accurate for the purposes of the case. The demanded premises were those designated thereon as the " Mineral Hill lot ; " and the curved line represents the course of the river.

The demandants denied that the demanded premises were included in the tenant's deed by a true construction of its terms; and thereupon the tenant offered the following evidence as bearing upon the construction of said deed:

1. " That Zenas Kingsley had no legal interest in any of the land described in the deed, except the demanded premises and an undivided third of seven acres of land adjoining the saw mill mentioned in the deed as deeded to Joseph S. and Zenas."

2. " That the deed was made in carrying out an arrangement for the division of property, real and personal, part of which was undivided property, and part had been held by them in carrying on manufacturing business, and that the deed in question was made in pursuance of a written agreement between the parties, in which the demanded premises are particularly mentioned,

which agreement is also offered in evidence." This agreement was signed and recorded (but not sealed or acknowledged) by Joseph Kingsley, Zenas Kingsley and the tenant, dated February 1, 1838, and entitled an agreement "respecting a settlement and disposition of business and property they have on hand and what they may have hereafter;" and the following are the essential parts thereof: "Joseph S. Kingsley has assigned him for his portion the large building nigh the bridge, the house he now lives in, and the house near the school-house, with all the lands lying north of the county road which leads to Northampton adjoining the heirs of Matthew Clark on the north; also south of the road aforesaid so far as the southeast corner of H. Cole's land, running easterly parallel with said Cole's south line to the river, then still running eastwardly to Lyman Bartlett's land so as to contain one half of the lot lying east of the river adjoining the road aforesaid; also one half of the mountain lot which we had of I. B. Thorp, and two thirds of land adjoining the saw mill, and two thirds of all we own of the saw mill and shingle do., with two thirds of the land belonging to the same." "Zenas Kingsley has assigned him, for his part or portion, the lower factory and all the machinery that belongs to the woollen manufacturing and cloth dressing, the house where he now lives, the lot of land on which the house stands adjoining the road west of H. Cole's land north running east to Lyman Bartlett's land so as to contain one half of the lot east of the river adjoining Zenas Wright's land on the south; one half of the mountain lot; and one third of the lot adjoining the saw mill, and one third part of what we own of the saw mill and shingle do." "Joseph Kingsley has assigned him the house and garden which stands east of the bridge, during his natural life, and one half of the grist mill with the use of one half of the blacksmith shop during his life, then afterwards to be Jos. S. Kingsley's forever."

3. "That, although the title to the premises was in Zenas Kingsley, they were treated as partnership property, and the beneficial interest was in them."

4. "That, in the division of the property of which this land formed a part, no deed was given to Joseph Kingsley by Joseph

.S. and Zenas, or either of them, although title and interest in real estate were retained by him."

If by the true construction of the deed from Joseph Kingsley and Zenas Kingsley to the tenant, in connection with such, if any, portion of the evidence offered by the tenant upon the construction of the deed as was admissible therefor, the tenant had no title, then judgment was to be entered for the demandants; but if the evidence offered by the tenant to affect the construction of the deed was admissible, and might be material, then the case was to stand for trial.

*C. Delano*, for the demandants.

*S. T. Spaulding*, for the tenant.    The demanded premises were conveyed to the tenant by the deed of February 1, 1838.    " Of " primarily means " proceeding from," and denotes distance.    In popular language, a place described as north of a given line or object is understood to be north from that line or object ; but not as certainly, or even presumptively, adjacent thereto.    Such also is the use of those or similar words in deeds.    *Wellfleet* v. *Truro*, 5 Allen, 137.    *Bond* v. *Fay*, 8 Allen, 212.    *Cronin* v. *Richardson*, Ib. 423.    Therefore the words " all the land' situate and lying north of the road aforesaid," even if standing alone, would include all the land of the grantors above the road, whether consisting of one or several pieces, and whether next to the road, or at a distance from it, especially as the lot conveyed below or south of the road is described as adjoining it.    But further, in this case, the word " bounded," in the phrase " bounded north of the heirs of Matthew Clark's land," is designedly used to fix the north line of Matthew Clark's heirs as the south line of the lot conveyed.

The evidence offered to show what land the grantors had an interest in north of and next to the land of Matthew Clark's heirs, and especially that Zenas Kingsley alone had the legal title, was necessary, to apply the description to the subject matter, The deed being only a release of the right and title of the grantors, subsequent purchasers were put upon inquiry what the interest of both and each was, whether the same or different, and whether an ownership in fee or of any less interest.    There is not the same presumption in a deed of release of right and title

only, as in a warranty deed, that the grantor has an interest in every part of the described premises. *Farwell* v. *Rogers*, 99 Mass. 33. The evidence tended to show that the parties to the deed possessed the parcels of land therein described, including the demanded premises, irrespectively of the legal title, as partnership property, so that, though Joseph Kingsley had no freehold interest in the premises, he had possessory and equitable rights therein. *Pettingill* v. *Porter*, 3 Allen, 349, 353. And it tended to show that they were distributing several parcels of land, including the demanded premises, as one subject matter.

If, applying the evidence and referring to the plan, it appears that a lot lay north of the road and next to it, and extended west to the road from Parsons's house to Wright's house, and had thereon the buildings mentioned, and it also appears that another lot lay north of and next to the land of Matthew Clark's heirs, but did not extend west to the road, in both of which lots the grantors had an interest, the description should be read as if written " all the land situate and lying north of the road aforesaid, that bounded north of (from) the heirs of Matthew Clark's land, and that bounded west on the road which leads from Asa Parsons's dwelling-house," &c., " with all the buildings standing thereon," &c. " North of the heirs of Matthew Clark's land " calls for land there, and cannot be changed or rejected. *Worthington* v. *Hylyer*, 4 Mass. 196. Therefore, even if it was the intention to exclude the Mineral Hill lot, such intention cannot be given effect in this action, without undertaking to proceed upon the principle of reforming the language of a deed in a court of law, which has no jurisdiction for that purpose.

The boundary west on the road may be rejected, if impossible. *Thatcher* v. *Howland*, 2 Met. 41. *Bosworth* v. *Sturtevant*, 2 Cush. 392. *Parks* v. *Loomis*, 6 Gray, 467, 472.

The sketchy character of the deed favors the construction which includes the Mineral Hill lot; because it appears, by the plan, that the tenant derives title to four or five separate parcels under one description.

GRAY, J. The deed of February 1, 1838, under which the tenant claims title, first clearly describes all the boundaries of

" one piece of land lying the south side of the county road," on both sides of the river, bounded by Cole's land on the west, by a definite line on the south, and by Bartlett's land on the east. It then adds " all the land situate and lying north of the road afore-said, bounded north of the heirs of Matthew Clark's land, and west on " another road distinctly identified. Upon applying the deed to the land as shown on the plan, we can have no doubt that, taking the whole deed together, the words " bounded north of the heirs of Matthew Clark's land " define the northern bound-ary of the premises granted. This is so obviously the only con-struction which will make the whole description coherent, that we must, if necessary, hold the word " of," in this clause, to have been used in its obsolete, but perfectly grammatical, meaning of " by," as in the familiar examples — " seen of men " — " led of the spirit " — " tempted of the devil." But the more natural infer-ence is, that the scrivener, having just written " situate and lying north of the road aforesaid," and being about to specify what the land granted lay south of, used, as correlative and equivalent to the words " lying south," the words " bounded north," and inad-vertently repeated the preposition " of," (which he had already applied to four of the boundaries — " lying the south side of the county road " — " east of Harvey Cole's land " — " lying east of the river " — " situate and lying north of the road aforesaid,") instead of substituting " on," as he did in the next following clause, when he came to describe the western boundary on the other road. Upon the construction for which the tenant con-tends, this road, which is as distinctly called for as any other monument referred to, would be wholly rejected. We are there-fore of opinion that the deed in question included only lands lying compactly together, and not the outlying lot farther to the north, which is separated by the land of Matthew Clark's heirs from the other lands described.

As the legal title in that lot, which is the land demanded in this action, is admitted to have been in Zenas Kingsley, and was not, for the reasons above stated, included in the deed to the tenant, it passed by the subsequent deed to Pomeroy, under whom the demandants claim, unaffected by any notice, actual or con-

structive, of any of the matters offered in evidence by the tenant. None of those matters are therefore admissible to impeach or defeat the title of the demandants. It may be remarked that the unsealed agreement of February 1, 1838, between the parties to the deed of that date, under which the tenant claims, describes " all the lands lying north of the county road" as " adjoining the heirs of Matthew Clark on the north," and that there is no evidence of the identity of " the mountain lot," therein mentioned, with the demanded premises. *Judgment for the demandants.*