Church, Ch. J.
The various exceptions taken to the decisions of the judge, sustaining the objections to evidence offered as to what.transpired between the deceased and the defendant Phipps in respect to surrendering possession of the premises occupied by the former, cannot be sustained.
The evidence was competent, but could not be proved by the defendant himself under the 399th section of the Code. The question whether the deceased was a tenant of the defendants at the time of the accident was strictly objection- ’ able upon the ground that it involved a legal question. The defendant was afterward permitted to speak of the fact of occupation. These were the only exceptions raised on the trial, except the general one involving the negligence of each of the parties. In general, negligence is a mixed question of law and fact, and it is often difficult to draw the line between the province of the court and that of the jury in determining the question. The decision of the jury upon the facts is conclusive upon us, while the law may be reviewed.
The court was asked to charge, as a matter of law, that the defendants were not guilty of negligence and that the deceased was, either one of which, if it had been charged, would have been fatal- to the action, and the question is whether the refusal to charge either was an error in law. While the deceased was a tenant of the defendants, of the upper stories of the building, it was their duty to exercise proper care in using the trap-door, which occupied nearly the whole passageway from the outer door to the stairs leading to the apartments of the deceased.
The deceased had an easement in this passage at all times for ingress and egress, while the defendants could use the trap-door at all times consistently with the reasonable rights *356 of the deceased. The evidence tended to show that it was customary to shut the trap-door for the night at from six to eight o’clock, and often before six. One witness testified positively that he shut the trap-door on the night in question before six, but it was open between eight and nine, when the deceased went there, and the jury must have believed that the porter neglected shutting it. The defendants claimed that they owed no duty to the deceased in respect to the trap-door at the time of the accident, because he was neither a tenant nor occupant of the premises.
The accident occurred on the twenty-ninth of January. The lease of the deceased extended to the first of May following. About two weeks previous to the accident an arrangement was made between the deceased and the defendants by which the lease was to be given up, and the deceased was to remove from the premises, leaving enough property to secure the amount-due for rént. There was a dispute as to the precise nature of this arrangement, and also whether the deceased had removed all his property except what he left in pledge, and whether he had in fact ceased to occupy the premises. He had been engaged several days in removing his property, and it appears that on-the twenty-seventh of January he gave the defendants his note-for sixty-two dollars and fifty cents, the amount due for rent up to the first of February, together with a list of articles to-' be left as security. The evidence also tended to show that a number of articles of property, besides those in the list,, remained upon the premises, which the deceased had a right to take away, and it appears that he had the key of the outer door. From these facts the jury were justified in finding that the arrangement to cancel the lease did not take effect until the first day of February, and that he had property in the apartments which he had a right to remove, and that he had not in fact entirely abandoned the premises or surrendered possession.
There was some conflict as to these facts, but the jury were justified in finding them. The court applied the law correctly, if the jury found these facts, in holding that the deceased *357 was a tenant until the first day of February, and had a legal right to enter the premises for any lawful purpose, and that the obligation of the defendants as to the use of the trap-door continued until that period. Upon these facts and law the jury could predicate negligence of the defendants.
It was made a serious question on the trial whether the deceased did not go there on the night in question for the unlawful purpose of drawing and using the defendants’ ale, kept in the cellar of the building. Considerable evidence was given that the deceased had frequently been seen to draw and drink ale in the cellar without permission, and had been remonstrated with about it, and the court properly charged the jury that if he went there for such a purpose, he could not recover, and they must have found that he did not.
There was evidence that deceased went there on the evening of the accident to procure some kindling wood which remained in his rooms. It is not improbable that the defence may have been prejudiced with the jury by the effort to magnify what, under some circumstances, might constitute an implied permission to drink a glass of ale, or, at most, a technical trespass of a trivial character, committed in the presence of the employes of the defendants, into a grave crime, which the deceased contemplated committing by stealthily entering the premises in the night-time. However this may be, we have no power to review the question.
The only remaining point is whether the deceased was guilty of negligence in entering the passageway without ascertaining, by procuring a light or otherwise, whether the trap-door was open.
Every one must exercise that degree of care which a prudent person would exercise under the particular circumstances ; and, as a general rule, the degree of care must be in proportion to the danger. We are referred to the railroad cases for the correct rule in this case. In crossing a railroad track, it has been held that a person is bound to exercise his senses of hearing and seeing, and that the omission to do this constitutes negligence; and where the fact of such omis *358 sion is undisputed it is a question of law. If the deceased had walked into the opening in daylight he would have been chargeable with negligence, within this rule, because' the ordinary use of his senses would have prevented it, and he would have been in fault.
But was extraordinary vigilance required when entering in the evening after the customary hour of closing the door Í The deceased had no reason to suppose that the trap-door was open. It was the duty of the defendants to keep it closed, except when necessary for their business; and it was their custom to close it every night before eight o’clock. Whether, under these circumstances, it was negligent in the-deceased to enter the passageway without a light, was, I think, a question of fact for the jury; Would a- person of ordinary prudence have deemed it necessary to procure a light any more than -if no trap-door had been there ? This,, and also the degree of darkness, the ability of the deceased to discover the situation and avoid the accident, as well as the care actually exercised by him, were peculiarly for the jury. If, by the act of the defendants, the deceased was induced to believe that more vigilance was unnecessary, the lack of such vigilance is no bar to the action. (S & B. on Beg., 28, and cases cited.)
This rule is peculiarly applicable to private arrangements respecting the mutual use of easements. If it had appeared that the defendants agreed to close the trap at a certain hour, and, for a considerable period, had complied with such agreement, it would not have been negligence for the deceased to have acted upon the belief that they complied with it upon this occasion. He would not, perhaps, have been justified in omitting the ordinary use of his senses; but the law would not require more than such ordinary care.
We cannot, therefore, say, as a matter of law, that the omission to procure a light was negligence. We think the case comes fairly within the principle that it was for the jury to determine whether, under the circumstances, the deceased was negligent in entering the passageway; and whatever our *359 opinion might be, if we were to pass upon it as a question of fact, we are foreclosed by the opinion of the jury, expressed by their verdict. The charge of the court presented the questions fairly to the jury upon all the points; and although some of the points upon which any verdict for the plaintiff depended appear quite balanced, and might have been found either way without legal error by the jury; and although, in looking at the case as a whole, the verdict appears to be a severe penalty upon the defendants for the negligence of a servant, yet, within established rules of law, we have been unable to find any legal reason for reversing the judgment, and it must, therefore, be affirmed.
All concur.
Judgment affirmed.