# New Era Gas Fuel Appliance Company
## v.
## Oscar M. Shannon et al.

*Agency—Bill for Discovery.*

1. Relief can not be granted for matters not charged.

2. Certainty in pleading is as essential in chancery as at common law.

3. The law will not tolerate the taking of advantage by one who holds a position of agency and trust to another, and thereby secures to himself the fruits of transactions begun and carried on in the scope of his agency, nor will it permit a third person, who in knowledge of the agency, negotiates and contracts with such agent, to deny responsibility and accountability to a disclosed principal.

4. Where it appears that an unexecuted contract has been made under such circumstances, without special reliance upon the skill of the agent, a court of equity may require the substitution of the principal in place of the agent for the performance of the undertaken obligation, and give to the principal the compensation contracted to be paid to the agent.

5. While, as a general rule, an agent will be held to account to his principal for all matters done by him within the scope of his agency, where the agency has terminated, his duty to account for transactions subsequently engaged in can not be required, and where the fruits of subsequent employment are sought to be taken, it must be made to appear affirmatively and positively that they are the direct result of the agency.

6. Every agent has the right to carry with him into a new employment all the skill and knowledge acquired in his previous engagements, and nothing short of an express contract on his part not to do so will debar him, and then only under the strict rules of law especially established to protect trade secrets.

7. A bill praying for a discovery should allege that complainant expects to establish the truth of his pleas by the discovery sought.

[Opinion filed June 3, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. LOREN C. COLLINS, Judge, presiding.

Mr. JESSE COX, for appellant.

It is perfectly clear that the defendant, Shannon, while in the employ of appellant, was the confidential agent of appellant. He was intrusted by appellant with the management of its business, and by reason of his position as general manager, was acquainted with all its business secrets. He learned thereby the best methods of manufacturing its products, and gained an exclusive knowledge of the names of the persons who needed the driers manufactured by appellant. He knew just how much these persons were willing to pay for them, the style and quantity required, and every other material fact which would enable him to obtain contracts with the persons who were then negotiating with appellant.

The power which he derived from this knowledge, and the influence with these customers which he thus acquired by reason of his position as manager of this company, was obtained by him while acting as agent for appellant, and while being paid by appellant for acquiring this knowledge for appellant's benefit. The knowledge and influence thus

acquired by Shannon belonged not to him, but to appellant, at least so far as respected the particular persons and cases in which negotiations were pending between appellant and its customers for the sale of these driers.

This knowledge, influence and power thus acquired by Shannon while occupying a fiduciary relation to appellant, could not legitimately be turned to his own account and made to benefit himself at the expense of appellant; certainly as long as Shannon continued to hold such fiduciary relation.

It is the duty of a trustee or confidential agent to do nothing for the impairing or destruction of the trust, nor to place himself in a position inconsistent with the interests of the trust. Nor is it only on account of the conflict between his interests and his duty to the trust that such transactions are forbidden. The knowledge which he acquires as trustee, is of itself sufficient ground of disqualification, and of requiring that such knowledge shall not be capable of being used for his own benefit to injure the trust. Davis v. Hamlin, 108 Ill. 39, at page 49.

Whenever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to that person with whose interests he has become associated. Id., Ibid.

In applying this rule the nature of the relation is to be regarded, and not the designation of the one holding the relation. It is applied not only to persons standing in a direct fiduciary relation to others, such as trustees, executors, attorneys and agents, but also to those who occupy any position out of which a similar duty ought in equity and good conscience to arise. Davis v. Hamlin, 108 Ill. 38; Dennis v. McCagg, 32 Ill. 429; Thorp v. McCullum, 1 Gilman, 614; Weaver v. Fisher, 110 Ill. 146; Stewart v. Duffy, 116 Ill. 47.

This doctrine applies even to one who is acting out of

mere friendship, and thereby ascertains facts material to
the interests of the person whom he advises.   Stewart v.
Duffy, 116 Ill. 47; Noel v. White, 1 Wright (Pa.), 514.

The contract for the sale of thirty-five clothes-driers,
which was made between Shannon on the one side and
McDonald and Cooling on the other, was a valuable piece
of property.   To fulfill it was to entitle the person fur-
nishing the driers to large profits.   Although a chose in
action, it was just as much property, therefore, as a piece
of real estate, a lease, or any other property such as is re-
ferred to in the above authorities.   And it is perfectly clear
that under the principles laid down in these authorities,
Shannon, while remaining in the employ of appellant, and
occupying the confidential relation which he then occupied,
could not take such a contract in his own name and for his
own benefit, and exclude appellant from the benefits of it
and of the profits to be derived from it.

If he had done so, the relation of principal and agent
continuing, the appellant, as his principal, could have
fulfilled the contract and compelled McDonald and Cooling
to pay the money to appellant.   Mechem on Agency, Sec.
769; Manufacturing Company v. Goddard, 14 Howard (U.
S.) 446.

These authorities and many others which could be
cited, show that an undisclosed principal is entitled to
maintain a suit upon a contract made by his agent in the
name of the agent.   The only exceptions to this rule are:

First.   Where the contract is under seal.

Second.   Where the contract calls for the personal skill,
or involves the personal influence or solvency of the
agent.

Third.   Where the other party with knowledge of the
real principal, elects to deal with the agent exclusively.
Mechem on Agency, Sec. 777.

This case, as stated in the bill, does not fall within any of
these exceptions, for the reason that appellant could have
furnished the driers with the same facility as Shannon could
do it.   It required, to construct and furnish the driers in

question, no personal skill peculiar to Shannon; and no personal consideration peculiar to Shannon was involved in the transaction. The defendants, McDonald and Cooling, did not know whether in making the contract they were contracting with appellant or not.

It is not denied that a confidential agent or trustee may, after his duties as such agent or trustee have ceased, deal with the trust property the same as if he had never been trustee or agent, provided he acts in good faith and does not take any unfair advantage of his former *cestui que trust*, by making undue and unfair use of the knowledge which he has acquired, and the power and influence which have come to him by reason of his position as such trusted agent or trustee. But to enable the agent or trustee to legally deal with the trust property after the trust has ceased, it must appear that all his duties to the trust, and in case of an agent, to his principal, have been fully performed, and that he has not made use of his fiduciary position to obtain such unfair advantage.

In the present case the defendant, Shannon, did not act in good faith. On the contrary, he resigned his position as manager for the sole purpose and with the admitted intention of taking advantage of his principal, by using his knowledge, which he had acquired while agent, and by making use of the efforts, which he had made while agent, to obtain an unfair advantage of his principal. He, therefore, did not act in good faith, and does not, therefore, bring himself within the rule, that a trustee or agent may deal with the property of the trust after he has ceased to be such agent or trustee.

There are also certain cases which hold that if one, who is an agent by parol for another to purchase real estate, repudiate the agency and act for himself, using his own funds, he can not be declared a trustee for his principal; but this is for the reason that these cases hold that the statute of frauds applies to the case. Borden v. Sheridan, 36 Iowa, 125.

These cases have no application to a case like the present,

and are not law in this State. Watson v. Union Iron &
Steel Co., 15 Ill. App. 509.

To enable appellee to obtain the benefit of the statute of
frauds, he would have to plead it, which he did not do either
by demurrer, plea or answer.

Mr. C. B. EYER, for appellees.

The demurrer admits such facts as are well pleaded, but
not such matters of law as may be suggested in the bill, or
which may be inferred from facts or conclusions upon them
which complainant may have reached; and. it does not
change the rule of pleading that the allegations of the bill
must be taken most strongly against the pleader. Stow v.
Russell, 36 Ill. 18, especially 29; Robey v. Cossitt et al., 78
Ill. 638.

The contract is not one which can be enforced by appel-
lant against McDonald and Cooling. Courts of equity will
not make vain decrees. If no relief can be granted the court
will dismiss the bill and leave the parties to their remedy
at law. Mechem on Agency, Section 770; Peeler y. Levy,
26 N. J. Eq. 330; Pack et al. v. Gaither, 73 N. C. 95.

Shannon can not be restrained from negotiating with the
former customers of appellant, and he had a right, after his
agency ceased, to deal with them. Irish v. Irish, 40 Chy.
Div. 49; Nichol et al. v. Martyn, 2 Espenasse, 732; Bucher
v. Bucher, 86 Ill. 377; First Nat. Bank v. Bissell, 4 Fed.
Rep. 698; Walker v. Derby, 5 Biss. 150; Balloch v. Hooper,
6 Mackey, 421.

The allegations of the bill are not sufficient to confer upon
appellant the right to discovery and accounting. Story's
Eq. Jur., Sec. 462 a.

SHEPARD, J. The appellant is an Illinois corporation
engaged in manufacturing and selling laundry driers. The
appellee Shannon was the inventor of an improvement in
said devices or machines, and transferred his patent there-
for to the appellant, and became an original stockholder
and director in said corporation, and was employed as its
general manager at a stated annual salary.

By the terms of his contract of employment, Shannon agreed to give his whole time and attention to the business of appellant in the manufacture, sale and construction of laundry driers, and in the course of such employment became intimately acquainted with the business affairs of appellant, the cost of construction, and the customers and persons with whom negotiations were being carried on for said machines. Continuing such relationship with the appellant for about a year and a half, Shannon, on July 18, 1891, suddenly quit the employment of appellant, and immediately engaged in the business of making and selling laundry driers of a similar kind to those made by appellant, on his own account. Shortly afterward appellant filed its bill in equity for an accounting, discovery and injunction against Shannon and his co-appellees, and to that bill, as amended, demurrers were sustained and the bill dismissed for want of equity. The bill was filed upon the theory that Shannon, taking advantage of his position as agent of the appellant, diverted from the appellant, customers with whom he had become acquainted, and with whom negotiations had either been begun or were substantially completed while he was in the employ of appellant, for the construction of a large number of laundry driers, from which large profits would have ensued to appellant, and took to himself the benefit of such negotiations and the profits of such sales, contrary to his duty as such agent, and that he and all such persons with whom he so dealt should be required to discover and account to appellant for all such transactions.

Undoubtedly a bill in equity framed upon such a theory and containing proper and essential allegations of facts, would be maintainable. The law will not tolerate the taking of advantage by one who holds a position of agency and trust to another, and thereby secures to himself the fruits of transactions begun and carried on in the scope of his agency, and neither will it permit a third person, who, in knowledge of the agency, negotiates and contracts with such agent to deny responsibility and accountability to a disclosed principal; and where it appears that an unexecuted

contract has been made under such circumstances, without special reliance upon the skill of the agent, a court of equity might well, as was asked in this case, require the substitution of the principal in place of the agent for the performance of the undertaken obligation, and give to the principal the compensation contracted to be paid to the agent. Such, substantially, was the relief asked in this case against the appellees McDonald and Cooling, who, it is alleged, began negotiations with appellant through Shannon while the latter was in its employment as manager, and either before he quit such employment, or very soon thereafter, entered into a contract with Shannon in his own name for thirty-five laundry driers, similar in kind and construction to those made by appellant, at a price which, on information and belief, appellant states would have yielded a large profit to appellant if the contract had been made with it for its machines. And as to Shannon, the bill seeks for a discovery of and accounting for that and all other contracts and sales made to unknown persons in pursuance of negotiations begun by Shannon while in appellant's employment.

The theory upon which such a bill may be maintained is not, however, sustained by the allegations of the appellant.

The bill alleges that Shannon, by reason of having invented parts of the machines, and because of his experience acquired while in the employ of appellant, was particularly fitted to sell and construct said driers. Under the rule that all intendments are to be taken most strongly against the pleader, and nothing appearing to negative the inference, it will be presumed that McDonald and Cooling contracted with reference to the personal skill and experience of Shannon. The only allegation of the bill tending in anywise to negative this presumption is, that McDonald and Cooling "may have supposed" they were in fact contracting with appellant, or "may have supposed" that Shannon, himself, was the proper party in whose name they should contract with appellant, and a disclosure as to that supposed fact is prayed for. That was not enough. Appellant should have alleged that the supposed fact would, upon a discovery, be

disclosed to be the truth. Such might be the inference, but a positive allegation was necessary. Primmer v. Patten, 32 Ill. 528. Relief can not be granted for matters not charged, for the court pronounces its decree *securidum allegata et probata*. Helm v. Cantrell, 59 Ill. 524.

A further allegation concerning the contract between Shannon and his co-appellees is, that by its terms "McDonald and Cooling agreed to purchase of the said Shannon personally, and not of your orator, and the said Oscar M. Shannon agreed to sell in his own name and for his own benefit" the said thirty-five laundry driers in place of a like number which appellant had been negotiating to construct for them.

The only definiteness in that allegation is, that the contract was with and for the individual benefit of Shannon. The appellant does not allege that it would have sold any number whatsoever of the driers to the appellees McDonald and Cooling, if Shannon had not quit its employment, and its conclusion that it lost large profits is mere argument without an allegation of facts to support it; nor is it alleged that the contract made by Shannon for himself for another kind of machine was a profitable one to Shannon, or would be so to appellant if it were permitted to execute it. Certainty in pleading is as essential in chancery as at common law. Primmer v. Patton, *supra*.

If McDonald and Cooling contracted with Shannon with reference to his peculiar personal skill and fitness to perform the work bargained for, and without knowledge of his agency for appellant, they could not be required to accept the service and construction of appellant for that of Shannon. But as to an accounting where the work has been done and nothing but payment remains to be made, the reason of the rule ceases, and it can not matter to McDonald and Cooling to whom they make payment. Mecham on Agency, Sec. 770, and cases cited.

The mere fact that there was a written contract between McDonald and Cooling and Shannon, the terms of which are unknown to appellant, and a disclosure thereof prayed,

is not enough.   It should have been positively alleged that the evidence of what the terms of the contract were, rested exclusively with the appellees and were known to no other persons, and such further facts should have been stated as to show affirmatively that appellant would be entitled to the benefit of the contract.   Story's Eq. Juris., Sec. 74; Vennum v. Davis, 35 Ill. 568.

On the question of the liability of Shannon to account for other work for other persons, contracted for and done by him as a result of negotiations begun while in the employment of appellants, there is not much to be said.   It is not alleged except by way of inference, that he ever did any such other work.

It is not doubted but that as a general rule, an agent will be held to account to his principal for all matters done by him within the scope of his agency.   But where the agency has terminated, his duty to account for transactions subsequently engaged in, can not be required, and where the fruits of subsequent employment are sought to be taken, it must be made to appear affirmatively and positively that they are the direct result of the agency.

Every agent has a lawful right to carry with him into a new employment all the skill and knowledge acquired in his previous engagements, and nothing short of an express contract on his part not to do so, will debar him, and then only under the strict rules of law especially established to protect trade secrets.

So far as appears in this case, Shannon was in no manner bound to give his services to appellant for any specified time, and it is not made affirmatively to appear that he has violated the scope of his agency for the appellant while it lasted.   We think the bill was properly dismissed.

*Decree affirmed.*