## American Insurance Co. v. John E. France.

1. FALSE REPRESENTATIONS—*when, confer cause of action.* Where a person, with fraudulent design or intent, asserts an unqualified falsehood concerning another and a direct, positive and material injury results to such other, a cause of action arises, and in such a case the plaintiff may prove a loss which, but for such illegal conduct, he would not have sustained, regardless of the fact that the matter, from which such loss resulted, was not secured to him by contract.

2. SLANDER OF BUSINESS—*when, confers cause of action.* Where a person, with fraudulent design or intent, makes a false imputation for the express purpose of injuring the business of another, and where injury results as the natural and probable results thereof, an action will lie, notwithstanding the words spoken are not, in themselves, defamatory.

3. PLEADINGS—*construction of.* All intendments are taken most strongly against the pleader.

4. DECLARATION—*allegation of pecuniary loss.* Where an insurance company brings an action for slander of business, alleging, among other things, the cancellation of insurance policies, as a result of such slander, in order to show that such cancellation was a material injury, the declaration should distinctly aver pecuniary loss resulting therefrom.

5. INSURANCE AGENT—*obligation of, after termination of agency.* Where an insurance agent is under no contractual restraint, and no violation of business secrets reposed in him by reason of his agency is involved, he has the right, after the termination of such agency, to influence policy holders of his former company to forfeit or transfer their policies in such company to other companies, regardless of whether such policies were obtained as the fruits of his own energies, or otherwise.

American Ins. Co. v. France.

Action on the case for false representations and slander of business. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed October 12, 1903.

KEESLAR & ACTON and R. K. WELSH, for appellant.

SALMANS & BROWN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case. The declaration contains six counts. The first three of these counts, differing only in that the first specifies several policies of insurance, the second, two policies, and the third, "divers certain policies," allege in substance that appellant, a corporation, duly licensed to do a fire insurance business in Illinois, was engaged in the business of writing fire insurance on farm and other risks and had issued certain policies which were valid; that it was entitled to the enjoyment of all of the profits and benefits to be derived from a continuance of said policies in full force and effect; that the appellee wrongfully contriving and wickedly intending to injure appellant and to deprive it of such profits and benefits, fraudulently and falsely represented to these policy holders " that the plaintiff had quit or gone out of the farm insurance business;" that he intended thereby to deceive said policy holders and induce them to cancel their contracts, knowing at the time that such representations were false and untrue; that by means of such false and fraudulent representations, appellee did deceive said policy holders and did induce them to surrender their policies for cancellation, and thereby appellant was specially damaged by being compelled to pay out certain moneys in refuting and correcting these false and fraudulent representations and in retaining said policies of insurance and preventing the completion of the cancellation thereof. The fourth count bases a right of action upon the allegations that appellant had various policies of insurance in force and that it was "entitled to have the said policies and each of them continue in full force and

effect and to enjoy the profits, gains and benefits to be derived therefrom, subject only to the termination thereof at the option of said policy holders. Yet the defendant wrongfully contriving and wickedly intending to injure the plaintiff and to deprive it of divers profits, gains and benefits to be derived from the said policies of insurance aforesaid, on, etc., unlawfully, wrongfully and maliciously did induce, persuade and prevail upon said policy holders aforesaid, and each of them, to terminate their said contracts of insurance." That because of such cancellation and termination, appellant was obliged to and did necessarily pay and lay out certain sums of money in and about reinstating said policies. The fifth and sixth counts are substantially the same except that one refers to "divers certain policies of insurance" and the other specifically names several policies. Aside from the general averments in all of the counts the important averments in these two counts and the ones upon which a right of recovery is predicated are, in substance, that appellee was in the employ of appellant, as its agent, to solicit business for it, and, as such agent, did solicit and cause to be issued policies of insurance, and was paid by appellant for his services in securing these policies; that under such circumstances appellant was entitled to have such policies remain in full force and effect and to enjoy the profits and benefits arising therefrom, free from any interference on the part of appellee; that after the issuance of said policies, appellee left the employ of appellant and entered the employ of another insurance company, engaged in a similar business in the same territory; that it was the duty of appellee to refrain from inducing these policy holders to cancel or terminate their contracts, but that he did at once go to said policy holders and did solicit, induce and prevail upon them to surrender these policies for cancellation, to secure which he had been paid by appellant; that thereby appellant was specially damaged and obligated to pay out certain sums of money in and by preventing the completion of the cancellation of said policies and in retaining and renewing the same.

To this declaration, and each count thereof, defendant demurred, both generally and specially, the special causes of demurrer being as follows : To the first, second and third counts, that the language therein alleged and complained of, that is, "that the plaintiff had gone out of or quit the farm insurance business," was wholly immaterial and insufficient as a basis of action.   To the fourth and fifth counts, that "no such duties or obligations rested upon the defendant and that the plaintiff was entitled to no such rights and privileges as in said counts claimed."   As to the sixth count, that the plaintiff had no such rights and that the defendant had no such duties in the premises as are therein claimed. This demurrer was sustained by the court to the entire declaration.   Appellant excepted to the ruling of the court and elected to stand by its declaration.   Judgment was thereupon entered in favor of appellee, and against appellant, for costs.   To the entry of this judgment, exception was taken and this appeal prosecuted.

The errors assigned are, in substance, that the trial court was wrong in sustaining the demurrer to each and all the counts of the declaration, and was in error in entering judgment for costs against appellant.

The questions raised by the demurrer to the sufficiency of the first four counts of the declaration can be discussed together.

It is undoubtedly the law that, where there is an assertion on the part of the defendant of an unqualified falsehood, with a fraudulent design or intent, as to a present or future fact, and a direct, positive and material injury to the plaintiff arises or results therefrom, it is sufficient foundation for an action on the case against said defendant, (Benton v. Pratt, 2 Wend. 385; White v. Merritt, 7 N. Y. 356; Hollenback v. Ristine, 75 N. W. Rep. 355; Morrasse v. Bouchie, 8 L. R. A. 524,) and that proof of loss by the plaintiff of what he would otherwise have obtained, though there was no contract for it which he could enforce, will sustain an action for the wrongful conduct by which the loss was occasioned.    Benton v. Pratt, *supra;* Walker v. Cronin, 107

Mass. 355; Accident Co. v. Horn, 101 App. 355. And that where a false imputation is made by the defendant for the express purpose of injuring the plaintiff in his business or profession, and where the injury is the probable and natural result of the speaking of the words, and where the injury actually follows, as intended by the defendant, an action will lie by the plaintiff against the defendant, although the words spoken are not defamatory. Morasse v. Bouchie (Mass.), 8 L. R. A. 524.

While the rule that a false statement must be material and that a pleading must show it to be material, does not apply here, the false statement being alleged to have been made to a third party who has no interest in the plaintiff and no motive or inclination to protect it, it is, we think, essential that the averments of the respective counts, must be such as, if taken as true, show a direct, positive and material injury to the plaintiff.

In each of the counts in question, the only material injury averred as the result of the alleged false representation, is that plaintiff was compelled to and did pay out certain moneys in refuting and correcting such false representation, and in preventing the completion of the cancellation of the policies.

In neither count is it averred that the retention of said policies in force was of any pecuniary value to the plaintiff, or that upon said cancellations being perfected, plaintiff would be compelled to return any part of the premium received therefor, or that their cancellation would result in any damage or pecuniary loss to it. We cannot assume that the risks covered by the policies in question were desirable, or that the premium paid in consideration of their issue, made them so, or that profits and benefits would have been derived therefrom if continued in force. While the counts aver that plaintiff was entitled to the enjoyment of all the profits and benefits to be derived therefrom, and that the defendant intended to deprive the plaintiff thereof, there is not any direct and positive averment that plaintiff was enjoying any benefit or profit therefrom, or that it

was deprived of the loss of such benefit or profit. Although it may be that from the fact as averred, that plaintiff paid out money to keep said policies in force, it can be inferred that their continuance in force was a pecuniary benefit and profit, and their cancellation a corresponding detriment or loss, this we think is insufficient. It is a familiar rule of pleading that all intendments of a pleading must be taken most strongly against the pleader. In view of this rule and what we have said, we are of opinion that the first four counts of the declaration do not state a cause of action, and that the demurrer thereto was properly sustained.

The fifth and sixth counts of the declaration, so far as the questions raised by the demurrer are concerned, are the same. Both of them base a right of recovery upon what is claimed to be an implied obligation resting upon the defendant to refrain from interfering with or obtaining the cancellation of policies of insurance, which he was hired and paid by the plaintiff company to secure, and which, as its agent, he did secure.

Appellant contends that the implied obligation referred to, rested upon the defendant, notwithstanding his employment had ceased at the time of the alleged wrongful interference, and that it was continuous during the life of the policies, even after the termination of his agency; that as to an unexecuted contract or one which has not yet been fully performed and which was secured by the agent for his principal, the agent, even after the termination of his agency, must keep his hands off. In support of such contention appellant cites the case of Ins. Co. v. Dangaix, 26 Ins. L. J. 305, decided by the Supreme Court of Alabama. In its opinion the court cites the cases of Edmonston v. Harthorn, 19 N. Y., and Ins. Co. v. Anderson, 29 N. E. R. 201, and after stating that "an agent may transfer himself with all his information, skill and patronage, to a rival of his old employer and may engage in business in competition with, and even to the injury of, his former principal, provided he does so in good faith, and without fraud, in part, says : ·

"We have thus stated the law as favorably as may be to the claims of the plaintiff. On the other hand, it is certainly true that there are obligations which continue and follow an agent after the termination of his agency.

"The authorities to which we have referred maintain the principle to which we give sanction, that when the plaintiff procured these policies to be issued by the defendant company, and was paid by it to procure them, there was an implied obligation on him, supported by the consideration he had been paid by the defendant, as binding as if it had been expressed, and which was continuous during the life of the policies, even after the termination of his agency, that he would not deprive defendant of the fruits of the services it had employed him to render.

"The policy holders, as we have said, had the unquestioned right to cancel their policies and demand repayment of their unearned premiums; and if they did so, of their own accord, at any time, whether before or after the termination of plaintiff's agency, the plaintiff was in no sense responsible for the act; but, for him, when he quit the defendant's employment, and for the purposes of his own gain, to turn about and induce those who had insured with the defendant to cancel their policies and insure with him in another company, or in other companies, thereby depriving defendant of the benefits of premiums on policies which he, as its agent, had procured, for a certain per cent of the premiums paid to and still retained by him, was a violation of duty he owed defendant which finds no sanction in law. Such a course is at war with all proper business principles. If the defendant had known that plaintiff would pursue this course, every one knows that it would not have employed him."

In the Anderson case, which is cited by the court in support of the rule thus laid down, the defendants had been the agents of the plaintiff, and, as such, insured Hoe & Co. with the plaintiff company, issuing to them two policies to run for three years. By the agreement between the plaintiff and defendants, the latter were to receive thirty per cent on all premiums received by them on policies issued through their agency. They received this per cent on the premiums for these two policies, for the entire term they were to run, it being expressly agreed that such *pro rata* of premiums should be returned to the company in case of

cancellation.    Before the expiration of the policies, defendants left the service of plaintiff and became the agents of another insurance company, and solicited Hoe & Co. to cancel their policies with plaintiff, and take others in their new company, which they did, and plaintiff, retaining the customary short rate, for which the policies provided in case the insured should, at any time, desire to cancel them, paid the balance of the premiums to the insured. The plaintiff sued the defendants for damages, for procuring cancellation of the policies.    The court held that the defendants were, under the terms of their contract, liable to plaintiff for thirty per cent of the returned premiums, and it was no error to so direct.

Appellant also cites the opinion of the Supreme Court of Nebraska in the case of Ins. Co. v. Hamilton, 26 Ins. Law Journal, 824.    In that case Hamilton was the agent of the insurance company at Omaha from August, 1891, until the revocation of his agency, on November 25 of the same year.    After learning that his agency had been or was about to be revoked he proceeded to cancel a number of policies which he had obtained for the company and to rewrite the risks in other companies for which he was agent. Concerning this conduct the court said:

"The insurance company made Hamilton its agent for the purpose of building up and extending its business, and for the purpose of taking insurance risks, not for the purpose of destroying it; and the law required of Hamilton that, as the company's agent, he should act in good faith with it, and do what he could to extend its business.    We do not say that an agent of an insurance company may never cancel a risk issued by him on behalf of his principal, but we do say that he has no right to cancel such a risk, without the request of his principal or the request of the insured, unless an exigency has arisen which makes it his duty to cancel the risk in order to subserve the interests of his principal.    We do say that he has no right to cancel a risk solely for the purpose of furthering his own ends, and in his own interest, and against his principal's interest.    Hamilton did not cancel these risks at the request of his principal, nor at the request of the insured, nor did he cancel them because an exigency had arisen which made it necessary for him to cancel them

in order to protect his principal's interest. He cancelled them solely because he knew that his agency was revoked, or was about to be revoked, and for the purpose of having these risks carried by the companies for whom he was agent. In doing this he was working against the interest of his principal."

Appellant also cites, in support of its contention, the case of New Era Co. v. Shannon, 44 Ill. App. 477, in which the appellant filed a bill against its ex-agent, Shannon, and others, asking for an accounting, discovery and injunction, upon the theory that Shannon, taking advantage of his position as agent of appellant, diverted from it customers with whom he had become acquainted, and that all negotiations had been begun or substantially completed while he was in the employ of appellant for the construction of a large number of laundry dryers. Concerning this situation the court said:

"Undoubtedly a bill in equity framed upon such a theory and containing proper and essential allegations of facts, would be maintainable. The law will not tolerate the taking of advantage by one who holds a position of agency and trust to another, and thereby secures to himself the fruits of transactions begun and carried on in the scope of his agency, and neither will it permit a third person, who, in knowledge of the agency, negotiates and contracts with such agent to deny responsibility and accountability to a disclosed principal; and where it appears that an unexecuted contract has been made under such circumstances, without a special reliance upon the skill of an agent, a court of equity might well, as was asked in this case, require the substitution of the principal in place of the agent for the performance of the undertaken obligation, and give to the principal the compensation contracted to be paid to the agent.

"It is not doubted but that as a general rule, an agent will be held to account to his principal for all matters done by him within the scope of his agency. But where the agency has terminated, his duty to account for transactions subsequently engaged in, cannot be required, and where the fruits of subsequent employment are sought to be taken, it must be made to appear affirmatively and positively that they are the direct result of the agency."

In Stein v. National Life Association, 105 Ga. 821, 46 L. R. A. 150, cited by appellee, it was held that equity will not enjoin one who has been agent of an insurance association, after the termination of the agency, from using any legitimate means to influence policy holders of the association to forfeit their policies, or transfer their insurance to other associations or companies, where there is no contractual restraint from doing those things, and when by so doing he violates no business secret or trust which has been reposed in him because of his relation as agent. In its opinion the court says:

" The order granted in the present case restrains the plaintiff in error from attempting to influence policy holders in the association to discontinue their policies or to transfer them to any other life insurance company. * * * The relation of Stein to the association was not a confidential one in the sense that he, by reason of it, acquired a knowledge of any business secrets. The business had been largely built up by him and his employees, and that knowledge of the policy holders which would be useful to him in the event of his representing as agent another company, was not confided to him by the association, if derived from it at all. Persons may have taken out policies in the association on account of personal friendship for Stein, or confided in his integrity, and there is no reason why he should not be allowed to solicit their business for another company which he represents, his agency of the association having been terminated. If this injunction was proper, then any general insurance agent whose contract as such had been terminated, could be restrained from further pursuing, in the interest of another company, the business of his calling among those with whom he might be able to do his best work, those whom he had secured as policy holders in the company he first represented."

It will be noticed that in the Hamilton case, *supra*, the act complained of was committed after the defendant had learned that his agency had been or was about to be revoked, but nevertheless before it had fully and actually terminated. As we understand the Sherman case, *supra*, the opinion of the court is adverse to the rule contended for by counsel for appellant. In the opinion the court says:

"Where the agency has terminated, the duty of the agent to account for transactions subsequently engaged in, cannot be required."

In the Dangaix case, *supra*, which is the only one cited by counsel which tends to support the rule, the question was, as counsel frankly admit, not necessarily involved in the decision of the case, and was in the nature of *obiter dicta*. An examination of the Edmonston case, cited by the court in support of the principle sanctioned, will disclose that the defendant there committed the alleged wrongful act while yet in the employ of his principal. It will be readily seen that the facts involved in the Anderson case, also cited in the Dangaix case, are so dissimilar to those in the case at bar as to be utterly inapplicable thereto, and that it does not in any way sanction the principle contended for.

We are of opinion that the rule laid down in the Stein case, *supra*, *i. e.*, that when an agent is under no contractual restraint, and no violation of business secrets reposed in him by reason of his agency is involved, he has the right, after the termination of his agency, to influence the policy holders of his former principal, to forfeit or transfer to other companies, their policies, whether such policies were the fruits of such agent's efforts while in his former employment, or otherwise, is the more consonant with reason and justice, and can be more readily sustained upon principle, than that urged by appellant. We, therefore, think that the demurrer to the fifth and sixth counts of the declaration was properly sustained.

The judgment of the Circuit Court being in accordance with the views herein expressed, it will be affirmed.

*Affirmed.*